UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

―――――

CORIELLE JOHNSON,

                Plaintiff,                Case No. 2:12-cv-205

v.                                        Honorable R. Allan Edgar

RUO DEEREN, et al,

                Defendants.

_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has paid the initial partial filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Beak, Heyns, Curley, Mercer, Payne, Waters, Kennerly, Holmes, Breedlove, Smith, Ferguson, Fair, Todd, McDonald, McConnkey, Russell, Leach, McPherson, LaPlante, Hietikka, Rasenen, Capello, Emgrory, Jondreau, Burke, Johns, and Skytta. The Court will serve the complaint against Defendants Deeren, LeBarre, Betts, Turner, Dewar, Bemis, Jacobsen, Comfort, and Meyers.

## Factual Allegations

Plaintiff Corielle Johnson, a state prisoner currently confined at the Marquette Branch Prison (MBP), filed a civil rights complaint pursuant to 42 U.S.C. § 1983 in the United States District Court for the Eastern District of Michigan.  On May 8, 2012, the Eastern District Court issued an Opinion and Order transferring the case to this court, noting that all of the named Defendants work in facilities which are located in the Western District of Michigan, the events complained of in the complaint occurred in the Western District of Michigan, and that Plaintiff is currently confined in the Western District of Michigan.  (Docket #4.)

In Plaintiff's complaint, he names Assistant Resident Unit Supervisor Leslie Beak, Resident Unit Manager Emgrory, Resident Unit Manager Payne, Assistant Resident Unit Supervisor Waters, Resident Unit Officer Deeren, Health Unit Manager LeBarre, Physician's Assistant Kennerly, Dr. Holmes, Myken Breedlove, Resident Unit Officer Smith, Sergeant. Ferguson, Corrections Officer Chism, Lieutenant John Doe, Resident Unit Officer Fair, RN Todd, Resident Unit Officer McDonald, Sergeant. McConnkey, and John Doe authorizing restrictions, all of whom are stationed in Ionia, Michigan.  Plaintiff names Warden Curley, Dr. Comfort, Resident Unit Manager Delene, Assistant Deputy Warden Jondreau, Assistant Resident Unit Supervisor Burke, Officer LaPlante, Dana Hietikka, James Rasenen, Gary Capello, Ted Meyers, Joanna Betts, Paul Turner, Resident Unit Officer Skytta, Resident Unit Officer Jacobsen, Assistant Resident Unit Supervisor Dewar, Resident Unit Officer Bemis, Corrections Officer Leach, Resident Unit Officer McPherson, Resident Unit Officer Brommenschenkel, and Officer LaPlante, who are employed at the Baraga Maximum Correctional Facility (AMF).  Plaintiff further names Resident Unit Manager Mercer, Assistant Resident Unit Supervisor Johns, Dr. John Doe, RN John Doe #1, RN John Doe #2,

who are employed at the Marquette Branch Prison (MBP).  Finally, Plaintiff names MDOC Director Daniel H. Heyns and Grievance Specialist Kent R. Russell, who are stationed in Lansing.

Plaintiff alleges that on the night of December 5, 2010, Plaintiff was extremely depressed and stopped Defendant McDonald to tell him that he was suicidal.  Defendant McDonald stated, "Come on, this is my Friday," but called Defendant McConnkey to the unit around 10:15 p.m.  Plaintiff was called into the Day Room and was questioned by Defendant McConnkey for over 45 minutes.  Contrary to MDOC policy, Defendant McConnkey then returned Plaintiff to his fully furnished cell.

Plaintiff states that a short time later, he stopped Defendant McDonald and showed him hospital papers, which detailed Plaintiff's prior admission for overdosing.  Plaintiff then began to take 50 Tylenol tablets in front of Defendant McDonald.  Defendant McConnkey was called back to the unit and escorted Plaintiff to the shower area.  Defendant Todd arrived to assess Plaintiff's condition and told Plaintiff that he would have a bad stomach ache.  Plaintiff demanded to be taken to the hospital, to no avail.  Plaintiff was placed on suicide watch, but did not have his temperature taken or his blood drawn.  While Plaintiff's cell was being stripped for suicide watch, it was found that the mattress cover was torn and Defendant McDonald stated to Defendant McConnkey that if Plaintiff wanted to be an "asshole and do this shit," he would be placed on a mattress restriction.

Plaintiff asserts that for 12 days, he was forced to sleep on an iron bunk with holes in it, wearing nothing but his boxers, with only a blanket to lie on and a gown to cover up with.  Plaintiff states that after the initial 12 days, he was left on mattress restriction for an additional 18 days.  On February 6, 2011, while on suicide watch, Plaintiff became extremely depressed and took his slot hostage in order to gain the attention of officers.  Defendants Ferguson, Fair, Smith, and

- 3 -

Chism told Plaintiff that they were going to pull him out of the cell so that he did not hang himself. Plaintiff was placed on 1 on 1 suicide observation. Upon arrival with the camera, Plaintiff was taken upstairs and officers entered his cell, saw the hole in his mattress and instead of replacing it, they took it and placed Plaintiff on a 30 day restriction. Plaintiff claims this was done in order to punish him for interrupting Super Bowl Sunday. This restriction was authorized by Lieutenant John Doe.

On January 14, 2011, Plaintiff wrote a grievance on Defendant LeBarre regarding Plaintiff's headaches and stomach problems. On February 25, 2011, Defendants Deeren and LeBarre confirmed the denial of Plaintiff's medications as a result of Plaintiff swallowing over 50 pills. Plaintiff asserts that Defendants actually put him on "restricted meds to act out sexually." Plaintiff claims that on May 14, 2011, after male officers attempted to get him to masturbate in front of them, Plaintiff took a bunch of aspirin and tylenol. Plaintiff was seen by the porter, who notified Corrections Officer Lancour. Nurse John Doe came later to pass medications and after being told that Plaintiff had vomited, left the unit. Approximately 45 minutes later, Plaintiff was taken for observation and his blood was drawn. Plaintiff suffered from abdominal pain, sweats, headaches, nausea and dark black vomiting until about 12:45 a.m., when Sergeant Belfry came in, saw Plaintiff's condition, and had Plaintiff sent to the hospital.

On May 31, 2011, Defendant Burke came to Plaintiff's cell with a medical authorization form addressed to Health Unit Manager Hill regarding a civil suit that Plaintiff had pending against the warden and three officers. Defendant Burke asked Plaintiff to sign the form. Plaintiff stated that he was not going to sign the form "until" someone from health care explained it to him. Defendant Burke placed a sticky note on the form indicating that Plaintiff had refused to sign it. Plaintiff states that as a result, his civil action was dismissed.

Plaintiff received a Penthouse subscription for April, May, June, July, and August of 2011, but each issue was rejected pursuant to Policy Directive 05.03.118 ¶ MM (14) "sexual

simulated acts." Plaintiff states that the magazines were rejected without a hearing because they were on the Warden's personal restricted list.

Beginning on May 23, 2011, Plaintiff was denied his headache medication. For over three months, Plaintiff suffered migraines to the point of losing consciousness, but Defendant Comfort never complied with Plaintiff's request for medication. On October 13, 2011, Defendant Betts wrote tickets on Plaintiff and two other inmates, but waited over 20 hours to type the misconduct reports and failed to sign the tickets. On October 14, 2011, Plaintiff informed the warden of his suspicion that the tickets had been falsified, because Defendant Betts was not in Plaintiff's housing unit on the date of the alleged misconduct. On October 19, 2011, the Hearing Investigator told Plaintiff that the tickets had been rescinded. Shortly thereafter, Plaintiff heard Defendant Betts complaining about him writing a kite to the warden. Plaintiff told Defendant Betts that he never thought she wrote the ticket. Defendant Betts responded that everyone knew about Plaintiff's kite writing and that they were going to "show" Plaintiff. On October 20, 2011, Defendant Betts falsified a misconduct ticket on Plaintiff.

Plaintiff claims that he filed grievances regarding the above conduct, and was placed on modified access to the grievance procedure as a result. The stated reason for Plaintiff's placement on modified access was that his grievances were vague and that Plaintiff was unable to grieve responsibly. When Plaintiff was finally taken off modified access on October 25, 2011, he only remained off for 45 days before being placed back on modified access. On November 3, 2011, Defendant Jacobsen took Plaintiff's food tray with Plaintiff's food still on it, stating that Plaintiff was going to learn to "knock it off." When Plaintiff's medications were brought later, he placed his hand in the food slot and demanded that a Sergeant address his food being taken. Plaintiff states that Defendant Jacobsen kicked the food slot in an attempt to crush Plaintiff's hand in the slot. On

- 5 -

November 4, 2011, Defendant Jacobsen came with Amy Shook, L.P.N., to give Plaintiff his medications and stated, "Put your fucking knees on the bed, ass in the air."

Plaintiff also asserts that when he first came into contact with Defendant Brommenschenkel, he announced that Plaintiff was the "one responsible for all the shit in one block," and stated that he was going to "have some fun." Defendant Brommenschenkel subsequently gave Plaintiff another inmate's mail. Plaintiff wrote a grievance on Defendant Brommenschenkel, who told Plaintiff "you just don't learn." Plaintiff claims that Defendant Bemis repeatedly attempted to get Plaintiff to masturbate in front of him, and that when Plaintiff refused, he falsely charged Plaintiff with making sexual threats against Defendant Bemis and with ejaculating on his cell window. Defendant Bemis also began calling Plaintiff "Jack Off Johnny," and refusing him his shower. When Plaintiff asked why, Defendant Bemis told him it was because he didn't "jack off." Defendant Meyers later referred to comments made by Defendant Bemis, stating "in four block you used to hide from us, now they say you don't hide anymore." Defendant Meyers then refused Plaintiff a shower.

On November 11, 2011, while Plaintiff was on food loaf restriction, his food slot was not secured. As part of an agreement to close his food slot without incident, Defendant Skytta gave Plaintiff a food tray while Defendants McPherson, LaPlante, and Bemis were passing out trays. Plaintiff subsequently noticed a gooey substance on his lettuce and corn. Defendant McPherson stated that he hoped Plaintiff would enjoy his tray. Plaintiff took a swab of the substance, placed it in plastic, and mailed it to Michigan State Policy Colonel Kristee Kirby. Plaintiff also mailed a complaint to the Ombudsman and the Warden. Plaintiff claims that this incident caused him to fear infection with herpes and other diseases, and mental anguish every time he sees corn or lettuce.

On December 16, 2011, the wing was flooded with over one inch of toilet water. When they were passing out breakfast trays, Defendants Turner and Jacobsen told Plaintiff to allow

- 6 -

his tray to be dropped inside the cell where water would splash up into Plaintiff's food.  Plaintiff refused and threatened to write a grievance, so Defendants Turner and Jacobsen refused to feed him. Plaintiff states that by this time he had been harassed by having his trays flipped over, being denied showers and having his mail given to other inmates for a period of 45 days.  Consequently, Plaintiff "broke" and kited for psychiatric services.  Plaintiff refused to come out of his cell, so a move squad came in with gas and moved Plaintiff to suicide watch.

While in the observation cell, which was 12 cells down from Plaintiff's cell, Defendants Dewar, Leach, Jacobsen, and Turner all went into Plaintiff's cell.  About two and a half hours later, Psychologist Annie Lanala heard Plaintiff's story and determined that he did not need to be on suicide watch.  Plaintiff was returned to his cell, where he found that his legal papers were torn up with pages missing, pictures and posters were wet and torn, and saliva was found on magazines, toothbrushes, and cell furnishings.  Plaintiff alleges that he took a sponge and gathered DNA samples, which he mailed to State Representative Stacy Oakes.  Plaintiff states that inmate Brown later told him that Defendant Turner had given him three books which had been taken from Plaintiff's cell.  Plaintiff sent a complaint, along with the affidavit of inmate Brown, to the Inspector, to no avail.

Plaintiff asserts that Defendants engaged in gross negligence by violating MDOC policy and state law.  Plaintiff also states that Defendants violated his rights under the First, Eighth, and Fourteenth Amendments.  Plaintiff sues Defendants in their individual and official capacities and seeks compensatory and punitive damages, as well as equitable relief.

<u>**Discussion**</u>

I.     <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp.*

- 7 -

*v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Initially, the court notes that Plaintiff fails to mention Defendants Beak, Heyns, Curley, Mercer, Payne, Waters, Breedlove, Russell, Hietikka, Rasenen, Capello, Emgrory, Jondreau,

and Johns in the body of his complaint.  In addition, Plaintiff alleges that the only misconduct engaged in by Defendants Kennerly and Holmes was to approve restrictions instituted by their subordinates.  It is clear that these Defendants are being named in Plaintiff's complaint merely because of their supervisory authority over other named Defendants.

Liability under Section 1983 must be based on more than merely the right to control employees.  *Polk Co. v. Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978).  Thus, Section 1983 liability cannot be premised upon mere allegations of *respondeat superior*.  *Monell*, 436 U.S. at 691; *Polk*, 454 U.S. at 325.  A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct.  *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982).  *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984).

Supervisory officials can be held liable for the acts of their subordinates only if plaintiff establishes that the supervisor failed to appropriately discharge his supervisory duties, and that this failure resulted in a denial or deprivation of plaintiff's federal rights.  *See e.g. Leach*, 891 F.2d at 1246; *Hayes v. Vessey*, 777 F.2d 1149, 1154 (6th Cir. 1985).  However, the failure of a supervisor to supervise, control or train the offending employee is not actionable absent a showing that the official implicitly encouraged, authorized, approved or knowingly acquiesced in, or in some other way directly participated in, the offensive conduct.  *Leach*, 891 F.2d at 1246.  Such a claim requires, at a minimum, that the official had knowledge of the offending employee's conduct at a time when the conduct could be prevented, or that such conduct was otherwise foreseeable or predictable.  *See e.g. Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992).  In addition, plaintiff must show that defendant had some duty or authority to act.  *See e.g. Birrell v. Brown*, 867 F.2d 956, 959

- 9 -

(6th Cir. 1989) (lower level official not liable for shortcomings of building); *Ghandi v. Police Dept. of City of Detroit*, 747 F.2d 338, 351 (6th Cir. 1984) (mere presence at the scene is insufficient grounds to impose Section 1983 liability in the absence of a duty to act); *accord Hall v. Shipley*, 932 F.2d 1147 (6th Cir. 1991).  In addition, merely bringing a problem to the attention of a supervisory official is not sufficient to impose such liability.  *See Shelly v. Johnson*, 684 F. Supp. 941, 946 (W.D. Mich. 1987) (Hillman, C.J.), *aff'd* 849 F.2d 228 (6th Cir. 1988).  Finally, supervisory liability claims cannot be based on simple negligence.  *Leach*, 891 F.2d at 1246; *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd* 915 F.2d 1574 (6th Cir. 1990).

Plaintiff has not alleged facts establishing that Defendants Beak, Heyns, Curley, Mercer, Payne, Waters, Breedlove, Russell, Hietikka, Rasenen, Capello, Emgrory, Jondreau, Johns, Kennerly and Holmes were personally involved in the activity which forms the basis of his claim. The only roles that Defendants Beak, Heyns, Curley, Mercer, Payne, Waters, Breedlove, Russell, Hietikka, Rasenen, Capello, Emgrory, Jondreau, Johns, Kennerly and Holmes had in this action involve the denial of administrative grievances or the failure to act.  Defendants Beak, Heyns, Curley, Mercer, Payne, Waters, Breedlove, Russell, Hietikka, Rasenen, Capello, Emgrory, Jondreau, Johns, Kennerly and Holmes cannot be liable for such conduct under § 1983.  *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999), *cert. denied*, 530 U.S. 1264 (2000).  Accordingly, the Court concludes that Plaintiff's claims against Defendants Beak, Heyns, Curley, Mercer, Payne, Waters, Breedlove, Russell, Hietikka, Rasenen, Capello, Emgrory, Jondreau, Johns, Kennerly and Holmes are properly dismissed for lack of personal involvement.

With regard to Defendant Burke, Plaintiff merely alleges that on one occasion, Defendant Burke came to Plaintiff's cell with a medical authorization form addressed to Health Unit Manager Hill regarding a civil suit that Plaintiff had pending against the warden and three officers. Defendant Burke asked Plaintiff to sign the form.  Plaintiff stated that he was not going to sign the

form "until" someone from health care explained it to him.  Defendant Burke placed a sticky note on the form indicating that Plaintiff had refused to sign it.  Such conduct does not violate the Constitution.  Therefore, the court will dismiss Plaintiff's claims against Defendant Burke.

Plaintiff claims that Defendants Deeren, LeBarre, and Comfort were deliberately indifferent to Plaintiff's serious medical needs in violation of the Eighth Amendment when they refused to give him his migraine medications.  The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes.  U.S. Const. amend. VIII.  The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976).  The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner.  *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious.  *Id.*  In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.*  The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person."  *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004).  If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898,  the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment."  *Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care."  *Brown v. Bargery*, 207 F.3d 863, 867

- 11 -

(6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834).  Deliberate indifference "entails something more than mere negligence," *Farmer*, 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result."  *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment.  *Estelle*, 429 U.S. at 105.  As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind.  Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.  In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 105-06 (quotations omitted).  Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim.  *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996).  This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

As noted above, Plaintiff alleges that Defendants Deeren, LeBarre, and Comfort refused him medication for his migraines because of Plaintiff's history of overdosing on medication. The court concludes that Plaintiff's claims against Defendants Deeren, LeBarre, and Comfort are sufficient to survive initial screening.

Plaintiff also claims that the actions of Defendants Smith, Ferguson, Fair, Todd, McDonald, and McConkey following his suicide attempts violated the Eighth Amendment. However, as noted above, Defendants placed Plaintiff on suicide watch, removed medications from his cell, and sent him to the hospital following his suicide attempts. The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). In this case, Plaintiff admits to overdosing on medication on more than one occasion, necessitating the discontinuation of his headache medication. Where, as here, "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Perez v. Oakland County*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). Therefore, Plaintiff's claims regarding his treatment by Defendants Smith, Ferguson, Fair, Todd, McDonald, and McConkey following his suicide attempts are properly dismissed.

Defendants Smith, Ferguson, Fair, Todd, McDonald, and McConkey's alleged failure to comply with administrative rules or policy does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectable liberty interest). Section 1983 is addressed to remedying violations of federal

law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81.

Moreover, to the extent that Plaintiff's complaint presents claims under state law, this Court declines to exercise jurisdiction. "Where a district court has exercised jurisdiction over a state law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the state law claims should be dismissed without reaching their merits." *Coleman v. Huff*, No. 97-1916, 1998 WL 476226, at *1 (6th Cir. Aug. 3, 1998) (citing *Faughender v. City of N. Olmsted, Ohio*, 927 F.2d 909, 917 (6th Cir. 1991)); *see also Landefeld v. Marion Gen. Hosp., Inc.,* 994 F.2d 1178, 1182 (6th Cir. 1993).

Plaintiff also alleges that Defendants McPherson, LaPlante, Bemis, and Skytta tampered with his food tray on November 11, 2011, in violation of his Eighth Amendment rights. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. The court concludes that the tampering of a food tray on one occasion does not rise to the level of an Eighth Amendment violation.

Plaintiff claims that he received false misconducts in violation of the Due Process Clause. The Court concludes that this claim is without merit on the basis of *Sandin v. Conner*, 515 U.S. 472 (1995). In *Sandin*, the Plaintiff alleged that prison officials deprived him of procedural due process by refusing to allow him to present witnesses during a disciplinary hearing and then sentencing him to segregation for misconduct. *Sandin*, 515 U.S. at 474. In reversing the Ninth Circuit's decision that the prisoner had a liberty interest in remaining free of disciplinary segregation, the Supreme Court abandoned the search for mandatory language in prisoner regulations as previously called for under *Hewitt v. Helms*, 459 U.S. 460 (1983), and ruled instead that it was time to return to the due process principles which were established in *Wolff v. McDonnell*, 418 U.S. 539 (1974), and *Meachum v. Fano*, 427 U.S. 215 (1976). *Sandin*, 515 U.S. at 483 (internal citations omitted).

In *Sandin*, the Supreme Court noted that in some cases, a restraint might be so extreme as to implicate rights arising directly from the Due Process Clause itself. *Sandin*, 515 U.S. at 483-484, 115 S. Ct. at 2300 (internal citations omitted). In addition, the Court recognized that States may create liberty interests protected by the Due Process Clause where the freedom from restraint imposed "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484, 115 S. Ct. at 2300. However, such restraints are rare and do not include, for example, transfer into solitary confinement. *Sandin*, 515 U.S. at 486, 115 S. Ct. at 2301. Nor does placement in administrative segregation normally constitute such a hardship. *Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir.), *cert. denied*, 522 U.S. 848 (1997); *Rimmer-Bey v. Brown*, 62 F.3d 789 (6th Cir. 1995). In addition, Plaintiff has no right to prison employment or to early release on parole. *Greenholtz v. Inmates, Nebraska Penal and Correctional Complex*, 442 U.S. 1, 7 (1979); *Board of Pardons v. Allen*, 482 U.S. 369 (1987); *Sweeton v. Brown*, 27 F.3d 1162, 1164-65 (6th Cir. 1994), *cert. denied*,

513 U.S. 1158 (1995); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir.1989).  Moreover, there is no right under federal law allowing a prisoner to prevent a transfer to another facility or giving him any choice concerning the facility where he will be incarcerated.  *Meachum*, 427 U.S. at 223-29[1]; *Olim v. Wakinekona*, 461 U.S. 238 (1983).

A plaintiff seeking to allege a procedural due process violation based on a state created liberty interest must not only show it is derived from mandatory language in a regulation, but also that it imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin*, 515 U.S. at 484, 115 S. Ct. at 2300; *Rimmer-Bey*, 62 F.3d at 790-791.  Pursuant to *Sandin*, "a liberty interest determination is to be made based on whether it will affect the overall duration of the inmate's sentence, and there is no evidence here that the segregation will impact Plaintiff's sentence."  *Jones*, 155 F.3d at 812.  The Sixth Circuit has determined that a prisoner's placement in administrative segregation for over a year is not an atypical or significant hardship as to create a liberty interest in due process.  *Mackey v. Dyke*, 111 F.3d 460, 461-63 (6th Cir.), *cert. denied*, 522 U.S. 848 (1997).  Because Plaintiff in this case fails to allege facts constituting an "atypical and significant hardship," Plaintiff's claim that he was denied procedural due process is without merit.

Moreover, Plaintiff's due process claims regarding the destruction and loss of property following a cell search by Defendants Turner, Dewar, Jacobsen, and Leach are barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986).  Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-

---

[1]     In *Meachum v. Fano*, 427 U.S. 215, 223-229 (1975), the Court held that transfers between prisons of different severity, such as between a medium security prison and a maximum security prison, did not deprive the prisoner of liberty within the meaning of the Due Process Clause.

deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivation of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized negligent acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, numerous state post-deprivation remedies are available to him. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. Mich. Dep't of Corr., Policy Directive 04.07.112, ¶ B (effective Nov. 15, 2004). Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. Mich. Comp. Laws § 600.6419; Policy Directive, 04.07.112, ¶ B. Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments, commissions, boards, institutions, arms, or agencies." Mich. Comp. Laws § 600.6419(1)(a). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property. Accordingly, Plaintiff's due process claims against Defendants Turner, Dewar, Jacobsen, and Leach will be dismissed.

- 17 -

Plaintiff received a Penthouse subscription for April, May, June, July, and August of 2011, but each issue was rejected pursuant to Policy Directive 05.03.118 ¶ MM (14) "sexual simulated acts." Plaintiff states that the magazines were rejected without a hearing in violation of his First Amendment rights because they were on the Warden's personal restricted list. The provision regarding the Restricted Publications List is contained in MDOC Policy Directive 05.03.118. A prison regulation which restricts an inmate's access to publications is constitutionally valid if it is reasonably related to a legitimate penological interest. *Bell v. Wolfish*, 441 U.S. 520, 550-552, 99 S. Ct. 1861 (1978); *Ward v. Washtenaw County Sheriff's Department*, 881 F.2d 325, 328-330 (6th Cir. 1989).

Prisoners are prohibited from receiving mail that may pose a threat to the security, good order, or discipline of the facility, may facilitate or encourage criminal activity, or may interfere with the rehabilitation of the prisoner, such as mail describing or depicting acts of sadism, masochism, bondage, or bestiality, or describing, depicting, or appearing to promote sexual acts involving children. MDOC Policy Directive 05.03.118 MM ¶ 5.

The policy also provides that if staff believes that mail to a prisoner is in violation of these guidelines, a hearing shall be held promptly to determine whether the mail meets the criteria for an excluded item or publication. If the hearing upholds the exclusion and the excluded item is a newspaper, magazine, catalog, book or similar publication, the institution shall submit a copy of the hearing report and a copy of the publication to the CFA Deputy Director for final determination. If the Deputy Director reverses the hearing decision, the mail shall be given to the prisoner. If the Deputy Director agrees with the results of the hearing, the publication will be placed on the Department's Restricted Publication List. Once a publication is placed on the Restricted Publication List, an institution may exclude it without further hearing; however, notice of the rejected mail shall be sent to the prisoner stating that the publication is on the List. The Restricted Publication List will

- 18 -

be maintained in the Office of the Deputy Director and information on additions or deletions to this list will be provided to all institutions.  Exclusion is appealable through the grievance procedure. MDOC Policy Directive 05.03.118 PP-XX.

Prisoners possess the right of free speech under the First and Fourteenth Amendments, including the right to receive publications.  However, these rights may be subject to restrictions and limitations.  *Bell v. Wolfish*, 441 U.S. 520, 545-548 (1978).  A prison regulation which restricts an inmate's access to publications is constitutionally valid if it is reasonably related to a legitimate penological interest.  *Ward v. Washtenaw County Sheriff's Department*, 881 F.2d 325, 328-330 (6th Cir. 1989).  *See also*, *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989); *Turner v. Safley*, 482 U.S. 78, 89 (1987); *Bell*, 441 U.S. at 550-552.

It is clear from Policy Directive 05.03.118 that in order for a publication to be placed on the Restricted Publication List, it would have received a hearing in which it was determined to be a threat to the order and security of the institution or to the rehabilitation of prisoners.  The court concludes that the restriction of such publications is clearly related to a legitimate penological interest.  There is no indication from Plaintiff's complaint that the specific magazine issues denied in this case did not undergo this review procedure prior to their placement on the Restricted Publication List.  Therefore, Plaintiff's claim that his right to freedom of speech was violated is without merit.

Plaintiff also makes a conclusory assertion that Defendants' conduct violated his rights under the Equal Protection Clause.  The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike.  U.S. CONST., amend. XIV; *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985).  A state practice generally will not require strict scrutiny unless it interferes with

a fundamental right or discriminates against a suspect class of individuals. *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 312 (1976). In this case, Plaintiff claims that he was treated differently than other inmates in the same unit because of his "custody status." Plaintiff states that he was not allowed to have a television because he was on detention, while other inmates in the same unit, who were not on detention, were allowed to possess a television. It is clear from Plaintiff's complaint that he was not "similarly situated" as inmates who were allowed to possess a television because he was on detention, while they were not. Therefore, Plaintiff's equal protection claims are properly dismissed.

Plaintiff claims that all of Defendants' alleged misconduct was the result of a conspiracy to violate Plaintiff's rights. A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action.'" *See Hensley v. Gassman*, 693 F.3d 681 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Id.*; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011).

Under § 1983, a plaintiff must plead with particularity, as vague and conclusory allegations unsupported by material facts are insufficient to state a claim. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987); *Smith v. Rose*, 760 F.2d 102,106 (6th Cir. 1985); *Pukyrys v. Olson*, No. 95-1778, 1996 WL 636140, at *1 (6th Cir. Oct. 30, 1996). In this case, Plaintiff merely reasserts

the alleged misconduct, but fails to allege any facts indicating that Defendants shared a single plan. Therefore, Plaintiff's claim of conspiracy is without merit.

Plaintiff further claims that Defendants violated his substantive due process rights. A plaintiff asserting a substantive due process claim faces a virtually insurmountable uphill struggle. He must show that the government conduct in question was so reprehensible as to 'shock the conscience' of the court." *Rimmer-Bey v. Brown*, 62 F.3d 789, 791 n.4 (6th Cir. 1995) (citing *Rochin v. California*, 342 U.S. 165 (1952)); *Mertik v. Blalock*, 983 F.2d 1353, 1367-68 (6th Cir. 1993)); *see also Hampton v. Hobbs*, 106 F.3d 1281, 1288 (6th Cir. 1997). In addition, where a particular Amendment "provides an explicit textual source of constitutional protection" against a particular sort of government behavior, "that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims. *Id.* at 273 (*citing Graham v. Connor*, 490 U.S. 386, 395 (1989)). To the extent that Plaintiff has set forth non-frivolous claims in his complaint, they are properly analyzed under the First and Eighth Amendments. Therefore, Plaintiff's substantive due process claims are properly dismissed.

Finally, the court concludes that Plaintiff's Retaliation claims against Defendants Deeren, LeBarre, Betts, Turner, Dewar, Bemis, Jacobsen, and Meyers are not clearly frivolous and may not be dismissed on initial review. In addition, as noted above, Plaintiff's Eighth Amendment claims against Defendants Deeren, LeBarre, and Comfort regarding the denial of migraine medication are sufficient to survive initial screening.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Beak, Heyns, Curley, Mercer, Payne, Waters, Kennerly, Holmes, Breedlove, Smith, Ferguson, Fair, Todd, McDonald, McConnkey, Russell, Leach, McPherson, LaPlante, Hietikka, Rasenen, Capello, Emgrory, Jondreau, Burke, Johns, and Skytta will be

- 21 -

dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42

U.S.C. § 1997e(c).  The Court will serve the complaint against Defendants Deeren, LeBarre, Betts,

Turner, Dewar, Bemis, Jacobsen, Comfort, and Meyers.

    An Order consistent with this Opinion will be entered.


Dated:   12/3/2012       */s/ R. Allan Edgar*
                R. Allan Edgar
                United States District Judge