UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

CORIELLE JOHNSON #324642,

    Plaintiff,

v.	Case No. 2:12-cv-205
	HON. GORDON J. QUIST

PAUL TURNER, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Corielle Johnson, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against forty employees of the Michigan Department of Corrections (MDOC). After several dismissals and appeals, Plaintiff has three remaining claims: (1) a deliberate indifference claim against Defendants Dana Hietikka, Ted Meyers, and James Rasenen; (2) a retaliation claim against Defendant Unknown Bemis; and (3) a retaliation claim against Defendant Paul Turner. Defendants have now moved for summary judgment pursuant to Fed. R. Civ. P. 56(a). (ECF No. 166.) Plaintiff has responded. (ECF No. 170.) This matter is now ready for decision.

The following are the facts related to the remaining claims viewed in the light most favorable to Plaintiff. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (citing *Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994) (noting any direct evidence offered by Plaintiff in response to a summary judgment motion are accepted as true)). Plaintiff's first claim stems from events that occurred on July 3, 2010. PageID.29. At approximately 2:45 P.M., Plaintiff attempted to overdose on Tylenol in front of Defendant Hietikka. PageID.29. After watching Plaintiff consume a handful of pills, Defendant Hietikka allegedly stated: "fuck this[,] I'm going home." PageID.29. At

approximately 3:20 P.M., several inmates informed Defendant Meyers that Plaintiff took a bunch of pills in front of Defendant Hietikka and that Defendant Hietikka did nothing. PageID.29. Defendant Meyers did nothing. PageID.29. Shortly thereafter, Plaintiff allegedly told Defendant Rasenen the same thing. PageID.29. Defendant Rasenen replied: "I don't know nothing," and walked away. PageID.29. At approximately 8:00 P.M., a registered nurse called Plaintiff for a blood draw. PageID.30. In front of the nurse, Plaintiff consumed another fifty Tylenol pills. PageID.30. Plaintiff was then taken to Baraga Memorial Hospital. PageID.30.

Plaintiff's second claim stems from events that occurred sometime between October 2011 and February 2012. PageID.1248. Plaintiff alleges that Defendant Bemis would try to make Plaintiff masturbate in front of him. PageID.25. When Plaintiff refused, Defendant Bemis "alongside Brommenschenkel" gave Plaintiff's mail to other inmates, did not allow Plaintiff to shower, and issued a sexual misconduct ticket against Plaintiff for making sexual threats and ejaculating on his cell window. PageID.25. Brommenschenkel has since been dismissed from this case.

Plaintiff's third claim stems from events that occurred on December 16, 2011. PageID.20. Plaintiff alleges that his prison wing was flooded with over one inch of toilet water. PageID.20. When Defendant Turner was passing out the breakfast trays, he told Plaintiff to let the tray drop in the cell where water could splash onto Plaintiff's food. PageID.21. Plaintiff refused and threatened to write a grievance against Defendant Turner. PageID.21. In response, Defendant Turner did not give Plaintiff his meal. PageID.21. Shortly thereafter, Defendant Turner entered Plaintiff's cell when he was not there and removed three books. PageID.21-22.

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party

opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (citing *Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. See also *Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); cf. *Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Defendants also move for qualified immunity on all three claims. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

In making a qualified immunity determination the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 816. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either approach without regard to sequence. *Id*.

Plaintiff alleges that Defendants Hietikka, Meyers, and Rasenen were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment when they refused to alert medical staff that Plaintiff was attempting to overdose on Tylenol. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Id.* at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Defendants argue, without explicitly stating, that Plaintiff has failed to meet the objective component of the deliberately indifferent test. Defendants contend that this case amounts to a delay in medical treatment; therefore, this Court should apply the rule adopted in *Napier v. Madison Cnty.*, 238 F.3d 739 (6th Cir. 2001). In *Napier*, the Sixth Circuit found that "[a]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Id.* at 742. Defendants argue that Plaintiff has failed to submit any "verifying medical evidence" to establish the detrimental effect of the delay in treatment.[1]

However, the Sixth Circuit has since limited the "verifying medical evidence" requirement to "those claims involving minor maladies or non-obvious complaints of a serious need for medical care." *See Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 898 (6th Cir. 2004). The Sixth Circuit further stated:

> Where the seriousness of a prisoner's needs for medical care is obvious even to a lay person, the constitutional violation may arise. This violation is not premised upon the "detrimental effect" of the delay, but rather that the delay alone in providing medical care creates a substantial risk of serious harm. When prison officials are aware of a prisoner's obvious and serious need for medical treatment and delay medical treatment of that condition for non-medical reasons, their

---

[1] It should be noted that Plaintiff has attached an Emergency Room Report to his Summary Judgment Response. PageID.1264-1266. However, the report does not appear to show that Plaintiff suffered any detrimental effect due to not receiving treatment sooner.

>     conduct in causing the delay creates the constitutional infirmity. In
>     such cases, the effect of the delay goes to the extent of the injury, not
>     the existence of a serious medical condition.

*Id.* at 899.

In this case, Plaintiff alleges that he consumed a handful of Tylenol—between forty and fifty pills—in front of Defendant Hietikka. Plaintiff further alleges that Defendants Meyers and Rasenen were informed by other inmates that Plaintiff needed medical attention because he attempted to overdose. In addition, the medical records show that Plaintiff vomited at some point. PageID.1264. All three Defendants refused to contact medical professionals. Defendants failed to submit any evidence contradicting these allegations. In the opinion of the undersigned, a reasonable jury could find that Plaintiff's medical need was "obvious even to a lay person." Therefore, verifying medical evidence to show the detrimental effect of the delay in treatment is not required to show a constitutional violation.

Because there are material questions of fact as to whether Defendants Hietikka, Meyers, and Rasenen, committed constitutional violations, the undersigned must determine whether the right was clearly established. The right of a prisoner to receive medical care was established in *Estelle v. Gamble*, 429 U.S. 97 (1976). In *Estelle*, the Court stated that the Eighth Amendment is violated when prison guards intentionally deny or delay access to medical care. *Id.* at 104-05. Therefore, in the opinion of the undersigned, the law is clearly established.

Next, Plaintiff asserts a retaliation claim against Defendant Bemis.[2] In general, retaliation based upon a prisoner's exercise of his or her constitutional rights violates the

---

[2] At his deposition, Plaintiff testified that he asserted two retaliation claims against Defendant Bemis. Plaintiff stated that his second retaliation claim appeared in paragraph 61 of the complaint. Paragraph 61 of the complaint states, in part, that "As mentioned this all started from kites & grievances . . . . [O]fficers began coming around making comments namely Jacobsen my first shift regular & Brommenschenkel my 2nd shift, and Bemis . . . ." PageID.23. The surrounding paragraphs detail additional actions against Plaintiff by Jacobsen, but do not mention any additional acts committed by Defendant Bemis. Jacobsen has since been dismissed from this case. To the extent plaintiff is still asserting this claim, it should be dismissed. Although Plaintiff has alleged that he was engaged in protected conduct—the filing of grievances, Plaintiff's vague allegation that Defendant Bemis "began coming around making comments" does not amount to an adverse action that would deter a person of ordinary firmness from engaging in filing grievances.

Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.*

Defendant Bemis argues that he is entitled to summary judgment because Plaintiff has not alleged that he was engaged in any protected conduct for which he was retaliated against. Defendant Bemis states: "The ability to show your genitals, or to masturbate in front of others, is not conduct protected by the Constitution or statute, and is actually prohibited by Michigan statute." PageID.1235. However, Defendant Bemis argument misconstrues Plaintiff's retaliation claim. Plaintiff alleges that Defendant Bemis wrote a grievance on Plaintiff because he *refused* to masturbate in front of him. Thus, Plaintiff's protected conduct is the right to not be forced to masturbate in front of others.

The Sixth Circuit has stated that "a convicted prisoner maintains some reasonable expectations of privacy while in prison, particularly where those claims are related to forced exposure to strangers of the opposite sex, even though those privacy rights may be less than those enjoyed by non-prisoners." *Cornwell v. Dahlberg*, 963 F.2d 912, 916 (6th Cir. 1992). *See also Fortner v. Thomas*, 983 F.2d 1024, 1030 (11th Cir. 1993) (quoting *Lee v. Downs*, 641 F.2d 1117, 1119 (4th Cir. 1981) (finding "a prisoner's constitutional right to bodily privacy because most people have 'a special sense of privacy in their genitals, and involuntary exposure of them in the presence of people of the other sex may be especially demeaning and humiliating'"). It follows logically that prisoners maintain the right to refuse to masturbate in front of prison guards. *See Arrington v. Wickstrom*, No. 2:10-CV-177, 2012 WL 1032701, at *6 (W.D. Mich. Feb. 21, 2012), report and recommendation adopted, No. 2:10-CV-177, 2012 WL 1029957 (W.D. Mich. Mar. 27, 2012). *See*

*also Boxer X v. Harris*, 437 F.3d 1107, 1111 (11th Cir. 2006) (finding that a female prison guard soliciting an inmate to masturbate violated the inmate's privacy rights).

Defendant Bemis also argues that he is entitled to summary judgment because Plaintiff was ultimately found guilty on the disciplinary ticket. A prisoner's claim that he was falsely accused of a misconduct ticket is barred where there has been a finding of guilt. *See Peterson v. Johnson*, 714 F.3d 905, 917 (6th Cir. 2013) (holding that a factual finding in a major misconduct proceeding has preclusive effect and is not subject to challenge in a § 1983 action); *Burton v. Rowley*, 234 F.3d 1267, at *2 (6th Cir. 2000) (unpublished) (quoting *Henderson v. Baird*, 29 F.3d 464, 469 (8th Cir. 1994) ("A finding of guilt based upon some evidence of a violation of prison rules 'essentially checkmates [a] retaliation claim.'") Here, it appears that Plaintiff was found guilty on the sexual misconduct ticket.[3] Plaintiff does not make any argument against this in his response brief. Based on the evidence presented, Plaintiff's retaliation claim against Defendant Bemis fails because he was found guilty of the misconduct ticket.

In addition, Plaintiff asserts a retaliation claim against Defendant Turner. After Plaintiff threatened to file a grievance, Defendant Turner refused to provide Plaintiff with food and removed three books from Plaintiff's cell. The district court originally dismissed Plaintiff's claim against Defendant Turner because Plaintiff did not exhaust administrative remedies. In reversing the district court, the Sixth Circuit stated:

> As the defendants acknowledge, Johnson was on "modified access" to the grievance process through most or all of this time period. See MDOC Policy Directive 03.02.130(HH)–(LL). While on modified access, Johnson was required to individually request Step I grievance forms by explaining to the grievance coordinator the basis for the grievance and his attempts to resolve the issue. Id. (KK). Johnson contends that he requested Step I forms for these three defendants and presents a purported handwritten copy of

---

[3] To support this proposition, Defendants submitted a portion of Plaintiff's deposition transcript where Plaintiff testified that he was found guilty on the sexual misconduct ticket. PageID.1249. However, Defendants did not submit a copy of the sexual misconduct ticket. Nonetheless, Plaintiff failed to address the retaliation claim against Defendant Bemis, let alone submit any evidence contradicting that he was found guilty on the sexual misconduct ticket.

>correspondence with the Grievance Coordinator that refers to these requests. R. 47, PageID 477; R. 76, PageID 608. In response, the Grievance Coordinator testified in affidavit that he maintains accurate records of all requests for grievance forms and never received the requests that Johnson claims to have sent. R. 62-3, PageID 555–56. As documentary evidence, the Grievance Coordinator presented only the grievance-form requests that he did have in his files.
>
>To resolve the dispute, the district court examined the quantity of other filings from Johnson: "It is clear that Plaintiff was able to get grievance forms on well over forty-seven occasions to file his grievances and appeals without any problems." R. 110, PageID 1051. Our court has rejected this reasoning in a similar case:
>
>>Defendants only suggest that "the number of grievances filed [by Johnson] as reflected in the grievance screen, actually demonstrates that despite any allegation of being prevented from utilizing the grievance system, that [Johnson] was able to file grievances on a more than regular basis." But such an inference does not adequately show that MDOC employees did not interfere with [Johnson's] ability to utilize the grievance process on certain occasions or as to particular claims. That [Johnson] was able to file some grievances does not mean that he was able to file all relevant grievances or that he was not prevented from timely filing the grievances.
>
>*Surles*, 678 F.3d 452, 457–58 (6th Cir. 2012). The district court is therefore left with a he-said/he-said genuine dispute of material fact. Although our court has not yet addressed how and when the court should resolve such disputes—and the issue is not properly briefed here—we note that the six circuits that have considered the issue have all found exhaustion to be a matter for the judge to decide before discovery proceeds. *See Messa v. Goord*, 652 F.3d 305, 308–10 (2d Cir. 2011) (and cases cited).

(ECF No. 124, PageID.1111-1112.)

Defendants now request an evidentiary hearing on whether Plaintiff properly exhausted his administrative remedies on his retaliation claim against Defendant Turner. In support of their request, Defendants have submitted excerpts of Plaintiff's deposition. During his deposition, Plaintiff stated multiple times that he wrote a grievance on Defendant Turner. PageID.1252-1253.

Plaintiff also stated that he did not remember if he wrote a grievance and maybe he only requested a grievance form from the grievance coordinator. PageID.1253.

In the opinion of the undersigned, Defendants request for an evidentiary hearing should be denied because they are entitled to qualified immunity. Plaintiff alleges that Defendant Turner retaliated against Plaintiff for threatening to file a grievance, but it is not clearly established that a threat to file a grievance is protected conduct. *See McKinney v. Rutenbar*, No. 2:14-CV-220, 2016 WL 4144253, at *2 (W.D. Mich. Aug. 4, 2016) (finding "it is not clearly established that a threat to file a grievance is protected conduct"); *Aaron v. Kimmel*, No. 11-13567, 2012 WL 2526961, at *5 (E.D. Mich. June 29, 2012) ("A First Amendment right not to be retaliated against based upon a threat to file a prison grievance was not clearly established during the events giving rise to Plaintiff's claim."); *Pasley v. Conerly*, 345 F. App'x. 981, 984 (6th Cir. 2009) ("This circuit appears not to have determined conclusively whether merely threatening to file a grievance constitutes protected activity."); *see also Brown v. Darnold*, 505 Fed. App'x. 584, 588 (7th Cir. 2013) ("[W]e have not decided whether a threat to grieve is a protected activity."); Bridges v. Gilbert, 557 F.3d 541, 555 (7th Cir. 2009) ("[I]t seems implausible that a threat to file a grievance would itself constitute a First Amendment-protected grievance.").

Plaintiff does not address the qualified immunity issue in his response brief. Instead, Plaintiff states that summary judgment should be denied because he has presented a genuine issue of material fact on Defendant Turner. Even assuming that Plaintiff argued he requested a grievance against Defendant Turner but did not receive one, this argument would contradict the record. In his complaint, Plaintiff alleges that he was not given food after stating "he would write there [sic] ass up." PageID.21. There is no record of Plaintiff ever attempting to obtain a grievance prior to Defendant Turner not giving Plaintiff his food. In addition, as the Sixth Circuit noted, Plaintiff did request a grievance against Defendant Turner after Defendant Turner allegedly took three books. PageID.477. However, the retaliation claim that Plaintiff is asserting is still based on the original

-10-

*threat* to file a grievance. Therefore, Defendant Turner is entitled to qualified immunity on the Plaintiff's retaliation claim, and the claim should be dismissed.

Accordingly, in the opinion of the undersigned, Defendants' Motion for Summary Judgment (ECF No. 166.) should be granted in part and denied in part. Specifically, the undersigned recommends that the retaliation claim against Defendant Bemis and the retaliation claim against Defendant Turner be dismissed. Therefore, the only remaining claim in this case is the deliberate indifference claim against Defendants Hietikka, Meyers, and Rasenen.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).


Dated: October 24, 2016

      /s/ Timothy P. Greeley\
TIMOTHY P. GREELEY\
UNITED STATES MAGISTRATE JUDGE